**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LEVI STRAUSS & CO., <br><br>        Plaintiff, <br><br>    v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br>        Defendants. | Case No. 25-cv-13860 |

## COMPLAINT

Plaintiff Levi Strauss & Co. ("LS&Co.") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold products using infringing and counterfeit versions of LS&Co.'s federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused LS&Co. substantial injury in the State of Illinois.

## II. INTRODUCTION

3.     This action has been filed by LS&Co. to combat e-commerce store operators who trade upon LS&Co.'s reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including jeans, jean jackets, and other apparel items, using infringing and counterfeit versions of LS&Co.'s federally registered trademarks (the "Unauthorized Levi's Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Levi's Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. LS&Co. is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Unauthorized Levi's Products over the Internet. LS&Co. has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

# III. THE PARTIES

**Plaintiff**

4.      Plaintiff LS&Co. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at Levi's Plaza, 1155 Battery Street, San Francisco, California 94111.

5.      Operating since the 1850s, LS&Co. is one of the oldest and best-known apparel companies in the world.  It manufactures, markets, and sells a variety of apparel, including its traditional LEVI'S® brand products, all of which are marked with a set of trademarks that are famous around the world.  LEVI'S® brand products have become enormously popular and even iconic, driven by LS&Co.'s arduous quality standards and innovative design.  Among the purchasing public, LEVI'S® brand products are instantly recognizable as such.  In the United States and around the world, the LEVI'S® brand has come to symbolize high quality, and LEVI'S® brand products are among the most recognizable apparel products in the world.

6.      LEVI'S® brand products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, the official levi.com website which was launched in 1994, and LEVI'S® Stores, including locations at 600 N. Michigan Avenue and 1552 N. Milwaukee Avenue in Chicago, Illinois.

7.      LS&Co. incorporates a variety of distinctive marks in the design of its various LEVI'S® brand products.  LEVI'S® brand products typically include at least one of the LS&Co.'s marks.  Often several LS&Co. marks are displayed on a single LEVI'S® brand product.  LS&Co. further uses its trademarks in connection with the marketing of its LEVI'S® brand products.  As a result of its long-standing use, LS&Co. owns common law trademark rights in its trademarks.  LS&Co. has also registered multiple trademarks with the United States

Patent and Trademark Office.  Among the marks registered are the Levi's trademarks listed below.

| REGISTRATION NUMBER | TRADEMARK |
|---|---|
| 1,140,011<br>1,124,018<br>1,130,486<br>4,660,979 | LEVI'S |
| 250,265 | |
| 581,610 | |
| 2,320,789 | |
| 849,437 | |
| 1,135,196 | |
| 928,351 | |

8.     In addition to the above Levi's trademarks, LS&Co. has registered the famous Arcuate Stitching Design trademark, the Tab Device trademark, the Two Horse Design and Two Horse Label Design trademarks, and the 500 Series trademarks.

| LS&Co.'s Two Horse Label Design patch and 501 marks | LS&Co.'s Arcuate Stitching Design and Tab Device marks |
|---|---|
| | |

**LS&Co.'s Arcuate Trademark**

9.     The Arcuate Stitching Design trademark ("Accurate trademark") consists of a distinctive pocket stitching design that is the oldest known apparel trademark in the United States still in continuous use.   LS&Co. has used the Arcuate trademark continuously since 1873 in interstate commerce on clothing products.   LS&Co. first used the Arcuate trademark on jeans and later used it on other products, as well.

10.     LS&Co. owns, among others, the following United States Registrations for its Arcuate trademark.

| REGISTRATION NUMBER | TRADEMARK |
| --- | --- |
| 404,248 | |
| 1,139,254 | |
| 2,794,649 | |

11.     The Arcuate trademark is valid and protectable, and exclusively owned by LS&Co.  The Arcuate trademark is famous and is recognized around the world and throughout the United States by consumers as signifying authentic, high-quality LEVI'S® brand products. The Arcuate trademark became famous prior to Defendants' conduct that is the subject of this Complaint.

**LS&Co.'s Tab Trademark**

12.     LS&Co.'s famous Tab Device Trademark (the "Tab trademark"), consists of a textile marker or other material sewn into one of the regular structural seams of the garment. LS&Co. uses the Tab trademark on LEVI'S® brand jeans and a variety of other clothing products.  LS&Co. began to display the Tab trademark on the rear pocket of its pants in 1936 when its National Sales Manager, Leo Christopher Lucier, proposed placing a folded cloth ribbon in the structural seams of the rear pocket.  The purpose of this "tab" was to provide "sight

identification" of LEVI'S® brand products. Given the distinctiveness of the Tab trademark, Mr. Lucier asserted that "no other maker of overalls can have any other purpose in putting a colored tab on an outside patch pocket, unless for the express and sole purpose of copying our mark, and confusing the customer."

13.     LS&Co. owns, among others, the following United States Registrations for its Tab trademark.

| REGISTRATION NUMBER | TRADEMARK |
|---|---|
| 356,701 | |
| 516,561 | |
| 577,490 | |
| 720,376 | |



| 774,625 | |
| 775,412 | |
| 1,157,769 | |
| 2,726,253 | |

14.     The Tab trademark is valid and protectable, and exclusively owned by LS&Co. The Tab trademark is famous and recognized around the world and throughout the United States by consumers as signifying authentic, high-quality LEVI'S® brand products. The Tab trademark became famous prior to Defendants' conduct that is the subject of this Complaint.

15.     LS&co. also has a trademark registration for a combination of the Arcuate trademark and the Tab trademark shown in the chart below.

| REGISTRATION NUMBER | TRADEMARK |
|---|---|
| 2,791,156 | |

## LS&Co.'s Two Horse Trademarks

16.     LS&Co. has used its Two Horse Design and Two Horse Label Design trademarks (collectively, the "Two Horse trademarks") continuously since as early as 1886 in interstate commerce on jeans and pants.   LS&Co. owns, among others, the following United States Registrations for its Two Horse trademarks.

| REGISTRATION NUMBER | TRADEMARK |
|---|---|
| 523,665 | |
| 1,044,246 | |
| 4,576,208 | |
| 1,030,033 | |

| | |
|---|---|
| 1,095,986 |  |
| 1,140,853 | |

**LS&Co.'s 500 Series Trademarks**

17.     LS&Co. also owns the distinctive trademarks 501, 505, 517, and 569, among other marks that consist of three digits starting with a "5" (collectively, the "500 Series trademarks").  LS&Co. has used the 500 Series trademarks continuously since as early as 1983 in interstate commerce on jeans and pants and, by virtue of LS&Co.'s use and promotion of the 500 Series trademarks together, the public recognizes LS&Co. as the source of apparel products falling within the 500 series.

18.     LS&Co. owns, among others, the following United States Registrations for its 500 Series trademarks.

| REGISTRATION NUMBER | TRADEMARK |
|---|---|
| 1,313,554 | 505 |
| 1,319,462 | 517 |
| 1,552,985 | 501 |
| 2,503,976 | 569 |
| 4,053,137 | 550 |

19.     The U.S. trademark registrations discussed above shall collectively be referred to herein as the "LEVI'S Trademarks."  The LEVI'S Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The LEVI'S Trademarks

have been used exclusively and continuously by LS&Co., some since at least as early as 1873, and have never been abandoned. The registrations for the LEVI'S Trademarks constitute *prima facie* evidence of their validity and of LS&Co.'s exclusive right to use the LEVI'S Trademarks pursuant to 15 U.S.C. § 1057(b). Attached hereto as **<u>Exhibit 1</u>** are true and correct copies of the United States Registration Certificates for the LEVI'S Trademarks.

20.    The LEVI'S Trademarks are exclusive to LS&Co. and are displayed extensively on LEVI'S® brand products and in LS&Co.'s marketing and promotional materials. LEVI'S® brand products have long been among the most popular jeans and apparel in the world and have been extensively promoted and advertised at great expense. In fact, LS&Co. has expended millions of dollars annually in advertising, promoting, and marketing featuring the LEVI'S Trademarks. LEVI'S® brand products have also been the subject of extensive unsolicited publicity resulting from their high-quality, timeless designs and worldwide renown. Because of these and other factors, the LEVI'S® brand and the LEVI'S Trademarks have become famous throughout the United States.

21.    The LEVI'S Trademarks are distinctive when applied to the LEVI'S® brand products, signifying to the purchaser that the products come from LS&Co. and are manufactured to LS&Co.'s quality standards. Whether LS&Co. manufactures the products itself or licenses others to do so, LS&Co. has ensured that products bearing its LEVI'S Trademarks are manufactured to the highest quality standards. The LEVI'S Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the LEVI'S Trademarks is of incalculable and inestimable value to LS&Co.

22.    Since at least as early as 1994, LS&Co. has operated a website where it promotes and sells LEVI'S® brand products at levi.com.    Sales of LEVI'S® brand products via the levi.com website represent a significant portion of LS&Co.'s business.    The levi.com website features proprietary content, images, and designs exclusive to LS&Co.

23.    LS&Co.'s innovative marketing and product designs have enabled LS&Co. to achieve widespread recognition and fame and have made the LEVI'S Trademarks some of the most well-known marks in the apparel industry.    The widespread fame, outstanding reputation, and significant goodwill associated with the LEVI'S® brand have made the LEVI'S Trademarks valuable assets of LS&Co.

24.    LS&Co. has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the LEVI'S Trademarks.    As a result, products bearing the LEVI'S Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from LS&Co.    LS&Co. is a multi-million-dollar operation, and LEVI'S® brand products have become among the most popular of their kind in the world.

**The Defendants**

25.    Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to LS&Co.    On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations.    Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

26.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for LS&Co. to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, LS&Co. will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

27.     The success of the LEVI'S® brand has resulted in significant counterfeiting of the LEVI'S Trademarks. Consequently, LS&Co. has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, LS&Co has identified many fully interactive, e-commerce stores offering Unauthorized Levi's Products on online marketplace platforms such as PayPal, Alibaba, Amazon, Temu, and Walmart, including the e-commerce stores operating under the Seller Aliases. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year—accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

28.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.
[3] *Id*.; S*ee also Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

platforms."[4]  Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5]  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6]  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

29.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Unauthorized Levi's Products to residents of Illinois.  Screenshots evidencing Defendants' infringing activities are attached as **Exhibit 2**.

30.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal.  E-

---

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* Report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
[5] *Id.* at 22.
[6] *Id.* at 39.
[7] Chow, *supra* note 4, at 186-87.

commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. LS&Co. has not licensed or authorized Defendants to use any of the LEVI'S Trademarks, and none of the Defendants are authorized retailers of LEVI'S® branded products.

31.     Many Defendants also deceive unknowing consumers by using the LEVI'S Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for LEVI'S® brand products. Other e-commerce stores operating under the Seller Aliases omit using the LEVI'S Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for LEVI'S® brand products.

32.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

33.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Levi's Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

34.     Defendants are collectively causing harm to Levis's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in

the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

35. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

36. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of LS&Co.'s enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to LS&Co. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of this Court.

37. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized Levi's Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from LS&Co., have knowingly and willfully used and continue to use the LEVI'S Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Levi's Products into the United States and Illinois over the Internet.

38.     Defendants' unauthorized use of the LEVI'S Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Levi's Products, including the sale of Unauthorized Levi's Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming LS&Co.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

39.     LS&Co. hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

40.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered LEVI'S Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The LEVI'S Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from LEVI'S® brand products sold or marketed under the LEVI'S Trademarks.

41.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the LEVI'S Trademarks without LS&Co.'s permission.

42.     LS&Co. is the exclusive owner of the LEVI'S Trademarks.  LS&Co.'s United States Registrations for the LEVI'S Trademarks (**Exhibit 1**) are in full force and effect.  On information and belief, Defendants have knowledge of LS&Co.'s rights in the LEVI'S Trademarks, and are willfully infringing and intentionally using counterfeits of the LEVI'S Trademarks.  Defendants' willful, intentional, and unauthorized use of the LEVI'S Trademarks

is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Levi's Products among the general public.

43. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44. LS&Co. has no adequate remedy at law, and if Defendants' actions are not enjoined, LS&Co. will continue to suffer irreparable harm to its reputation and the goodwill of its well-known LEVI'S Trademarks.

45. The injuries and damages sustained by LS&Co. have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Levi's Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

46. LS&Co. hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

47. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Levi's Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with LS&Co. or the origin, sponsorship, or approval of Defendants' Unauthorized Levi's Products by LS&Co.

48. By using the LEVI'S Trademarks in connection with the sale of Unauthorized Levi's Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Levi's Products.

49. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Levi's Products to the general public involves the

use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

50.     LS&Co. has no adequate remedy at law and, if Defendants' actions are not enjoined, LS&Co. will continue to suffer irreparable harm to its reputation and the goodwill of its LEVI'S® brand.

## PRAYER FOR RELIEF

WHEREFORE, LS&Co. prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the LEVI'S Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine LEVI'S® brand product or is not authorized by LS&Co. to be sold in connection with the LEVI'S Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine LEVI'S® brand product or any other product produced by LS&Co., that is not LS&Co.'s or not produced under the authorization, control, or supervision of LS&Co. and approved by LS&Co. for sale under the LEVI'S Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Levi's Products are those sold under the authorization, control or supervision of LS&Co., or are sponsored by, approved by, or otherwise connected with LS&Co.;

d.  further infringing the LEVI'S Trademarks and damaging LS&Co.'s goodwill; and

e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for LS&Co., nor authorized by LS&Co. to be sold or offered for sale, and which bear any of LS&Co.'s trademarks, including the LEVI'S Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2)  Entry of an Order that, upon LS&Co.'s request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as PayPal, Alibaba, Amazon, Temu, and Walmart (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the LEVI'S Trademarks;

3)  That Defendants account for and pay to LS&Co. all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the LEVI'S Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4)  In the alternative, that LS&Co. be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the LEVI'S Trademarks;

5)  That LS&Co. be awarded its reasonable attorneys' fees and costs; and

6)  Award any and all other relief that this Court deems just and proper.

Dated this 12th day of November 2025.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Marcella D. Slay
Greer, Burns & Crain, Ltd.
200 W. Madison St. Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
mslay@gbc.law

*Counsel for Plaintiff Levi Strauss & Co.*